UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
STEPHANIE SHEVONE PIERCE,

                 Plaintiff,

         - against -

EQUIFAX, INC; TRANSUNION
INTERMEDIATE HOLDINGS, INC; and
EXPERIAN INFORMATION SOLUTIONS,
INC,

                 Defendants.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-7101 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

*Pro se* Plaintiff Stephanie Shevone Pierce brings this action alleging violations of the Fair Credit Reporting Act ("FCRA") against the three primary credit reporting agencies: Equifax, Inc., Transunion Intermediate Holdings, Inc., and Experian Information Solutions, Inc. (collectively, "Defendants"). Plaintiff's request to proceed *in forma pauperis*, (Dkt. 2), is granted. For the reasons stated below, the Court dismisses Plaintiff's claim without prejudice, pursuant to Federal Rule of Civil Procedure ("Rule") 12(h)(3), for lack of standing. Plaintiff is granted leave to file an amended complaint within thirty (30) days from the date of this Memorandum and Order.

**BACKGROUND**

Plaintiff alleges that "[t]hroughout 2025," she obtained consumer disclosures from each Defendant. (Compl., Dkt. 1, ¶ 8.) Plaintiff claims that these disclosures contained inaccurate personal identifying information, including "[i]ncorrect and unauthorized names"; "[o]utdated, non-deliverable, or unfamiliar addresses"; "[u]nauthorized telephone numbers"; and "[i]ncorrect or obsolete employment information." (*Id.* ¶ 9.) She alleges that "the inaccurate information does not belong to Plaintiff and presents a serious risk of misidentification, identity confusion, and

improper association with third-party accounts." (*Id.* ¶ 10.) She claims that she notified each Defendant in writing about the inaccuracies, (*id.* ¶ 11–12), but that they nonetheless failed to conduct a reasonable reinvestigation "within the 30-day statutory deadline required by 15 U.S.C. § 1681i(a)(1)(A)" and "[c]orrect or delete all disputed personal identifiers," (*id.* ¶ 14). She further alleges that Defendants "continued to publish and disseminate Plaintiff's inaccurate personal information to third parties after receiving notice," though she does not specify the identity of these "third parties." (*Id.* ¶ 17.) Plaintiff's alleged injuries are "[l]oss of control over personal identifying information"; "[r]isk of identity confusion and misidentification"; and "[t]ime, effort, and emotional distress correcting Defendants' errors." (*Id.* ¶ 31.) Plaintiff seeks "statutory damages of $20,000" from each Defendant, but does not specify the number of alleged statutory violations attributable to each Defendant. (*Id.* ¶ 32.)

## LEGAL STANDARD

Pursuant to the *in forma pauperis* statute, the Court must dismiss a case if it determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In addition, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citing 16 Moore's Federal Practice § 106.66[1] (3d ed. 2005))).

For the Court to exercise subject-matter jurisdiction over any claim, a plaintiff must have standing to pursue their claims under Article III of the United States Constitution, "which limits

2

federal judicial power to 'cases' and 'controversies.'" *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (first quoting U.S. Const. art. III, § 2; and then citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61); *see also Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("[F]or a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm.").

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation modified) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law." *McCrary v. County of Nassau*, 493 F. Supp. 2d 581, 584 (E.D.N.Y. 2007) (citing *Faretta v. California*, 422 U.S. 806, 834 n.36 (1975)). "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction." *Neary v. Driscoll*, No. 2:24-CV-0736 (NJC) (ST), 2024 WL 1704715, at *3 (E.D.N.Y. Apr. 19, 2024). At the same time, where a plaintiff's factual allegations are insufficient to establish subject-matter jurisdiction, but a liberal reading of the complaint gives "any indication that a valid claim might be stated," the Court must give the plaintiff an opportunity to amend the complaint at least once before dismissal. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)); *see also Carter v. HealthPort Techs.,*

3

*LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (noting that "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice").

## DISCUSSION

Plaintiff brings her claims under the FCRA. However, as discussed below, because she fails to allege concrete injury resulting from Defendants' alleged violations of the FCRA, she lacks standing to pursue these claims.

## I.      The FCRA

The FCRA was passed by Congress "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Specifically, "[t]he FCRA was enacted in 1970 amidst concerns about the accuracy of information disseminated by credit reporting agencies." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015). "In order to protect consumers from the harm that can result when inaccurate information is disseminated into their credit reports, the FCRA prescribes specific duties on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies." *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK) (WDW), 2005 WL 1153623, at *2 (E.D.N.Y. May 16, 2005). The FCRA defines "consumer reporting agency" as any entity that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). The FCRA requires consumer reporting agencies to verify the accuracy of credit information in general and in response to consumer disputes. *See id.* § 1681e(b) ("Section 1681e(b)") (requiring consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" in consumer reports); *id.*

4

§ 1681i(a)(1)(A) (requiring consumer reporting agencies to investigate and correct or delete inaccurate information if disputed by the consumer).

The FCRA creates a private right of action against consumer reporting agencies for "negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (internal citations omitted) (first citing 15 U.S.C. § 1681o; and then citing *id.* § 1681n). "For any such violation, the credit reporting agency is liable to the consumer for 'actual damages' sustained[] [and] the costs of the action together with reasonable attorney's fees." *Id.*

To succeed on a claim that a consumer reporting agency failed to follow proper compliance procedures under Section 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB) (SMG), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019) (quoting *Gestetner v. Equifax Info. Servs., LLC*, No. 18-CV-5665 (JFK), 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019)).

## II.    Plaintiff Fails to Establish Standing to Bring an FCRA Claim

To establish standing to bring an FCRA claim, a plaintiff must do more than simply allege a violation of the statute. In *TransUnion*, the Supreme Court established that plaintiffs who sue a credit reporting agency under the FCRA for failing to ensure the accuracy of their credit files only have standing if they suffered reputational harm because of inaccurate or misleading information being published to third parties. 594 U.S. at 432–39. And even some inaccurate information provided to third parties might not establish a concrete injury where it is "too trivial to 'cause harm

5

or present any material risk of harm.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)).

Here, Plaintiff fails to allege that she suffered any concrete injury from the allegedly inaccurate information contained in her credit reports. Although Plaintiff alleges that Defendants "publish[ed] and disseminate[d] Plaintiff's inaccurate personal information to third parties," (Compl., Dkt. 1, ¶ 17), she does not specify the identity of these third-party recipients. *See Lodhi v. JHPDE Fin. 1, LLC*, No. 22-CV-5434 (JMA) (JMW), 2022 WL 17363935, at *2 (E.D.N.Y. Oct. 21, 2022) ("Conclusory allegations that consumer reports were disseminated to third parties, without more, do not amount to allegations of actual dissemination as required to pass muster under *TransUnion*." (collecting cases)), *report and recommendation adopted*, 2022 WL 17361233 (E.D.N.Y. Dec. 1, 2022). Plaintiff's allegations of dissemination of inaccurate information to unspecified "third parties" are insufficient to establish injury and thus standing at this time. Should Plaintiff choose to amend her complaint, she must specify the third-party recipients to which she alleges the Defendant credit reporting agencies distributed inaccurate information.[1]

Additionally, even if Plaintiff were to allege the specific recipients of the allegedly inaccurate information, that information would have to be sufficiently harmful to Plaintiff's reputation or creditworthiness to establish injury. *See Phipps v. Experian Info. Sols., LLC*, No. 23-

---

[1] Plaintiff also alleges "emotional distress" resulting from "correcting Defendants' errors," (Compl., Dkt. 1, ¶ 31), but this allegation too falls short of a concrete injury sufficient to confer standing. *See Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (holding, in FCRA context, that "conclusory allegations" of "mental and emotional pain, anguish, humiliation[,] and embarrassment of credit denial," without alleging "any particularized injury or actual dissemination to third-party creditors," does not confer constitutional standing); *Francois v. Victory Auto Grp. LLC*, No. 22-CV-4447 (JSR), 2023 WL 4534375, at *6 (S.D.N.Y. July 13, 2023) ("Typically, emotional injury under the FCRA relates to either having credit denied or having false information about the plaintiff broadcast to others in an embarrassing way, and . . . none of that happened here.").

7529, 2024 WL 5001842, at *2 (2d Cir. Dec. 6, 2024) (summary order) (noting that "[i]ncorrect address information, a one-year disparity in birth year, and slight variations of the [plaintiff]'s name are the types of inaccuracies that do not, without more, 'work any concrete harm' by virtue of their dissemination alone" (quoting *Spokeo*, 578 U.S. at 342)).  Here, the only inaccurate information allegedly reported was incorrect and/or outdated names, addresses, telephone numbers, and employment information.  (*See* Compl., Dkt. 1, ¶ 9.)  Without greater specificity about the information that was allegedly inaccurate and how that inaccurate information caused Plaintiff harm, the Court cannot determine whether these inaccuracies are sufficient to establish standing.  Should Plaintiff choose to file an amended complaint, she must include additional detail as to the ways in which her personal information was inaccurate, such as what "employment information" was "[i]ncorrect or obsolete," (Compl., Dkt. 1, ¶ 9).

### III.    Leave to Amend

In light of the Court's duty to liberally construe *pro se* complaints, Plaintiff is granted thirty (30) days to file an amended complaint.  Should Plaintiff elect to do so, she should, to the extent possible:  (1) identify the specific information that Defendants reported that she alleges is inaccurate; (2) explain why the information is inaccurate; (3) plead any facts suggesting that Defendants failed to follow reasonable procedures in verifying information generally or in response to her inquiries; (4) identify all third parties that received the information, such as creditors; and (5) explain how the allegedly inaccurate information caused her to suffer reputational harm, denial of credit, or some other concrete harm.

Plaintiff is reminded that an amended complaint will completely replace, not supplement, the original complaint, and therefore, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.  Her amended complaint must be captioned "Amended

Complaint" and bear the same docket number as this Memorandum & Order, No. 25-CV-7101 (PKC) (RML).

## CONCLUSION

Plaintiff's request to proceed *in forma pauperis*, (Dkt. 2), is granted, and Plaintiff's complaint is dismissed without prejudice for lack of subject-matter jurisdiction due to Plaintiff's lack of standing.  *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B).  Plaintiff is granted thirty (30) days from the date of this Memorandum & Order to file an amended complaint as detailed above.  Any amended complaint that Plaintiff elects to file will be reviewed for sufficiency pursuant to 28 U.S.C. § 1915(e)(2)(B).  If Plaintiff fails to amend the complaint within thirty (30) days as directed by this Order, judgment dismissing the case shall be entered.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Plaintiff might wish to contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project at 212-382-4729 or FedProEDNY@nycbar.org to make an appointment for free, confidential, limited-scope legal assistance at the Brooklyn Federal Courthouse.  The Federal Pro Se Legal Assistance Project is not a part of, or affiliated with, the Court.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 8, 2026
      Brooklyn, New York